UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| GURPREET S.,[1]<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, et al.,<br><br>Respondents. | No. 1:26-cv-00437-TLN-JDP<br><br>**ORDER** |

This matter is before the Court on Petitioner Gurpreet S.s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition").[2]  Respondents filed an opposition.  (ECF No. 6.)  Petitioner replied.[3]  (ECF No. 13.)  For the reasons set forth below, the Petition is GRANTED and Respondents must IMMEDIATELY RELEASE Petitioner.

---

[1]  As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initial, to protect sensitive personal information.  *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2]  Initially, the Court construed the pro se Petition as containing a motion for temporary restraining order ("TRO").  (ECF No. 3 (citing *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).)  Thereafter, Petitioner then filed a motion for temporary restraining order.  (ECF No. 7.)  In response to the motion, Respondents waived hearing and requested the Court enter a final judgment on the Petition if it was inclined to grant injunctive relief.  (ECF No. 6 at 3.)

[3]  The Court appointed counsel and the Federal Defender replied on behalf of Petitioner.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND[4]

Petitioner is a citizen of India who fled his country and came to the United States to seek asylum.  (ECF Nos. 1 at 5; 6 at 2.)  Around March 20, 2023, he entered the United States and was briefly detained by immigration authorities.  (ECF Nos. 1 at 5; 6 at 2.)  Around March 22, 2023, Petitioner was released on his own recognizance.  (ECF Nos. 1 at 5; 6 at 2.)

For two and a half years, Petitioner complied with the conditions of his release and followed the law.  (ECF No. 1 at 5–6.)  He developed ties with his local community, fostered relationships, and attended and volunteered at his local faith organization.  (*Id.*)  Petitioner has no criminal history and no violations of the conditions of his release.  (*Id*.)

On August 7, 2025, an immigration judge ordered Petitioner removed to India.  (ECF No. 6 at 2.)  Petitioner asserts his application for asylum was denied because his attorney did not timely file required documents.  (ECF No. 1 at 6.) On November 17, 2025, Petitioner filed an appeal with the Ninth Circuit, which is still pending.  (ECF No. 6 at 2.)  A stay of removal is in effect pending the outcome of the appeal.  (*Id.*)

On October 25, 2025, during a routine check-in appointment, U.S. Immigration and Customs Enforcement ("ICE") detained Petitioner.  (*Id*.)  Petitioner has now been detained for nearly four months without a hearing.  (ECF No. 13 at 9.)  Petitioner challenges the lawfulness of his civil detention through the Petition and a Motion for TRO.  (ECF Nos. 1, 5.)  The Court now considers the Petition on the merits.

## II.    STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the

---

[4]    The facts are not disputed.

Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### III.    ANALYSIS

Petitioner claims his detention violates procedural due process under the Fifth Amendment Due Process Clause.  (ECF No. 1 at 16–17.)  In opposition, Respondents contend Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2).  (ECF No. 6 at 2.)

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### A.  Liberty Interest

As for the first step, the Court finds Petitioner has established a protectable liberty interest.  *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause").  "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24,

3

2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original)).  "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025).  To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, Petitioner gained a liberty interest in his continued freedom after he was released on his own recognizance by immigration authorities in 2023.  Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release.  Indeed, during his release, Petitioner did comply with the conditions of his release.  (ECF Nos. 1 at 5–6; 13 at 2.)  As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom as he awaits the outcome of his immigration proceedings.  *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Respondents argue that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), but "acknowledge that the weight of authority is not in their favor."  (ECF No. 6 at 3.)  Section § 1225(b)(2) mandates detention during removal proceedings for "applicants for admission" who are "seeking admission" and does not provide for a bond hearing.  Conversely, 8 U.S.C. § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).  Section 1226(a) provides the Government broad discretion whether to release or detain the individual and it provides several layers of review for an initial custody determination. *Id.*  It also confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right

4

to seek a new hearing when circumstances materially change." *Id.* at 1202.

Until the U.S. Department of Homeland Security ("DHS") changed its policy in July 2025, the Government consistently applied § 1226(a), not § 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.

The vast majority of courts across this Circuit, including this one, have repeatedly rejected Respondents' argument on the applicability of § 1225(b)(2).  *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases); *see also Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025) (issuing vacatur of unlawful DHS July Policy for a nationwide certified class).  "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country."  *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).  In comparison, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice."  *Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases).

For these reasons, the Court finds Petitioner is not an applicant "seeking admission" subject to mandatory detention under § 1225(b)(2).  Thus, Petitioner maintains a strong liberty interest protected by due process.

### B. Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute

procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, Petitioner has a substantial private interest in remaining free from detention. Petitioner built a life over his nearly three-year release including developing ties with the community and participating in his local faith community. (ECF No. 1 at 6.) Despite that, Petitioner has now been detained for nearly four months without a hearing. (ECF No. 13 at 9.) Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention. Where there is no actionable final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up). Here, Petitioner's order of removal is stayed, pending appeal, and Respondents may not deport him. (ECF No. 6 at 2.) Additionally, before releasing him in 2023, DHS would have found that Petitioner was not a danger to the community nor a flight risk. (ECF No. 13 at 1–2.) *See* 8 C.F.R. § 1236.1(c)(8). Petitioner also asserts that he complied with all conditions of his release, he has followed all laws, and he is neither a danger to the community nor a flight risk. (ECF No. 1 at 6.) Petitioner also has no criminal history. (*Id*.) Thus, the Court finds there is a serious likelihood Petitioner could be erroneously deprived of his liberty interest. Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is substantially low in detaining Petitioner without procedural protections, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). The cost and time of procedural safeguards are

6

minimal here.  Notice and custody determination hearings are routine processes for Respondents.  Indeed, these are the very processes owed to Petitioner under § 1226(a).  It would also be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him.  *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

On balance, this Court finds the *Mathews* factors (and § 1226(a) of the INA) demonstrate Petitioner was entitled to a bond hearing.  Respondents have not provided such a hearing.  (ECF No. 1 at 2.)  Therefore, Respondents violated the Fifth Amendment and Petitioner's procedural due process rights.

**IV.    CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Petitition for Writ of Habeas Corpus (ECF No. 1) is GRANTED.

2. Petitioner's Motion for Temporary Restraining Order (ECF No. 7) is MOOT.  The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

3. Respondents must IMMEDIATELY RELEASE Petitioner GURPREET S. from custody under the same conditions he was released prior to his current detention.  Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.

4. By **February 20, 2026**, Respondents must file a notice of compliance with this Court's Order and identify the date of Petitioner's release.

5. To avoid further irreparable harm and protect the public interest, Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing

evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.

6. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Dated: February 19, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE