UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GURPREET S.,[1]

          Petitioner,

     v.

WARDEN OF THE GOLDEN STATE
ANNEX DETENTION FACILITY, et al.,

          Respondents.

No. 1:26-cv-00437-TLN-JDP

(A# 246-748-808)

**ORDER**

This matter is before the Court on Petitioner's Motion to Enforce Judgment.[2]  (ECF Nos. 17, 20.)  Respondents filed an opposition.  (ECF No. 22.)  Petitioner replied.  (ECF No. 23.)  For the reasons set forth below, the Court GRANTS the motion.[3]

///

///

[1]    The Court omits Petitioner's full name to protect sensitive personal information.  *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2]    After his re-detention, Petitioner mailed a second petition for writ of habeas corpus containing Petitioner's handwritten description of the circumstances relating to his re-detention. (ECF No. 20.)  The Court construes the filing as a document in support of Petitioner's motion to enforce (ECF No. 17), rather than a second successive habeas petition.

[3]    On June 5, 2026, this Court issued a minute order granting the motion and ordering Petitioner's immediate release.  (ECF No. 26.)  This Order sets out the Court's reasoning.

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On February 19, 2026, this Court granted the Petition for Writ of Habeas Corpus in this case after finding Respondents violated Petitioner's Fifth Amendment due process rights during his civil immigration detention.  (ECF No. 14.)  The Court enjoined Respondents from re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder.  (*Id.* at 7–8.)  The next day, Petitioner was released from detention.  (ECF No. 16.)

Three weeks later, Respondents sought to re-detain Petitioner.[4]  (*See* ECF No. 17-1 at 14–19.)  On March 12, 2026, Respondents filed a motion in immigration court to set a bond hearing and mailed notice to Petitioner at an incorrect address.  (*Id.*)  Respondents listed the correct street and city, but the wrong street number (listing 5505 instead of 5655).  (*Compare id.* at 19 (proof of service) *with id.* at 5–10 (proof of address).)  The same day, the immigration court mailed notice to Petitioner — at the same faulty address — setting the bond hearing for April 2, 2026.  (*Id.* at 36.)  About March 28, 2026, prior to the hearing, the court's service envelope was returned from the U.S. Post Office as "not deliverable as addressed."  (ECF No. 17-1 at 38; ECF No. 22 at 11.)

The parties appear to agree that error originated in a change of address form dated the day of Petitioner's release.  Petitioner contends the form contains scrivener's error at the hands of an U.S. Immigration and Customs Enforcement ("ICE") official.  (ECF No. 20 at 5; ECF No. 23 at 2.)  Respondents accuse Petitioner of providing the wrong address.  (ECF No. 22 at 2.)  Respondents produced the offending document: the form was sent from ICE to the immigration court and it was typed and signed by an ICE deportation officer.  (*Id.* at 8.)

It is undisputed that Petitioner did not receive actual notice of the hearing date.  (*See* ECF No. 17 at 2; ECF No. 22 at 2.)  As a result, neither Petitioner nor his counsel appeared for the April 2, 2026 bond hearing.  (ECF No. 17-1 at 37.)  Yet, the immigration judge ("IJ") proceeded with the hearing.  (*Id.* at 36–39.)  He did not find Petitioner to be a danger to the community.  (*Id.*)  However, he did find Petitioner to be a flight risk, reasoning "first and foremost" that the

---

[4]   Petitioner is subject to an order of removal, but he appealed and the removal order has now been stayed by the Ninth Circuit.  (ECF No. 24.)

hearing notice was undeliverable for lack of correct address, and among other factors, he noted Petitioner's failure to appear at the hearing. (*Id.*) The IJ ruled that Petitioner may be re-detained. (*Id.* at 38.) Thereafter, sometime in April, Respondents re-detained Petitioner. (ECF No. 17-1 at 2–3).

Upon learning of the hearing and Petitioner's resulting arrest, Petitioner's immigration counsel requested a second bond hearing. (ECF No. 17 at 2.) An IJ found that he lacked authority to reverse the April 2, 2026 order denying bond. (*Id.*) Ultimately, Petitioner withdrew his request for a second bond hearing and, instead, seeks relief from this Court to enforce its judgment. (*Id.*)

Through the instant motion, Petitioner alleges Respondents failed to comply with this Court's Writ of Habeas Corpus (ECF No. 14) because they failed to properly notify Petitioner of the bond hearing and failed to establish by clear and convincing evidence that he poses a danger to the community or a flight risk. (ECF No. 17 at 3.) Petitioner seeks immediate release and, effectively, seeks the same injunction this Court has already made permanent. (*See id.*; ECF No. 14 at 7–8.) The Court now considers whether Respondents' notice complied with procedural due process and this Court's Order to provide a minimum of seven days' notice in advance of a pre-deprivation hearing.[5] (ECF No. 14 at 7.)

**II.    STANDARD**

Federal courts have inherent authority to enforce their own orders, including those granting injunctive relief in habeas actions. *See Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011) ("[T]he district court ha[s] authority to review compliance with its earlier order conditionally granting habeas relief."). A district court has continuing jurisdiction to enforce its injunction under the court's power of contempt. *See Gunn v. Univ. Comm. to End War in Viet*

---

[5]    Because relief is warranted upon finding notice was deficient, the Court need not reach the IJ's findings, although this Court is troubled by the IJ's decision to proceed with the bond hearing and his apparent presumptions in favor of the Government that Petitioner was at fault for an address error without any evidence when it is the Government's burden to prove Petitioner is a flight risk by clear and convincing evidence. *See Arizmendi-Medina v. Garland*, 69 F.4th 1043, 1047 (9th Cir. 2023) (finding immigration judges may not proceed in a manner that deprives a noncitizen of due process).

*Nam*, 399 U.S. 383, 389 (1970); *Crawford v. Honig*, 37 F.3d 485, 488 (9th Cir. 1994); *see also Waffenschmidt v. MacKay*, 763 F.2d 711, 716–17 (5th Cir. 1985) ("Enforcement of an injunction through contempt proceedings must occur in the issuing jurisdiction because contempt is an affront to the court issuing the order.").

A motion to enforce judgment is the "usual method" for requesting a court interpret its own judgment and compel compliance. *California by & through Becerra v. Dep't of the Interior*, No. C 17-5948 SBA, 2020 WL 13093994, at *3 (N.D. Cal. July 30, 2020) (citing *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004)). If petitioner has received all relief required by the court's prior judgment, the motion to enforce should be denied. *Heartland Hosp.*, 328 F. Supp. 2d at 11. But if petitioner demonstrates that respondent "has not complied with a judgment entered against it, even if the noncompliance was due to misinterpretation of the judgment," the motion shall be granted. *Id.* To prevail, the party seeking to enforce the injunction has the burden of showing by clear and convincing evidence that the enjoined party violated a "specific and definite order of the court." *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (citing *Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992)).

**III.    ANALYSIS**

The Court first addresses Respondents' threshold argument that the instant motion should be dismissed on prudential exhaustion grounds, before turning to the merits of whether Respondents provided notice of the bond hearing sufficient to comply with this Court's judgment.

A.    Prudential Exhaustion

Respondent argues Petitioner's motion should be dismissed for failure to exhaust administrative remedies. (ECF No. 22 at 3–6 (citing *Leonardo v. Crawford*, 646 F.3d 1157, 1159 (9th Cir. 2011)) (holding a district court should ordinarily dismiss a habeas petition without prejudice or stay proceedings until the petitioner exhausts administrative remedies, "unless exhaustion is excused."). Petitioner counters that prudential exhaustion should indeed be excused. (ECF No. 23 at 4 (citing *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quoting *S.E.C. v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981) (waiver permissible "where

4

administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, [or] irreparable injury will result.")).)  The Court primarily reviews Respondents' actions for contempt with its judgment, rather than wading into the findings of an IJ's adverse ruling which may be appealed, however, to the extent the same issues now before this Court could also be litigated through appeal to the Board of Immigration Appeals, the Court waives prudential exhaustion here.

"Under the exhaustion doctrine, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'" *S.E.C.*, 637 F.2d at 688 n.4 (quoting *Myers v. Bethlehem Shipbldg. Co.*, 303 U.S. 41, 50–51 (1938)). "Exhaustion can be either statutorily or judicially required.  If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Laing*, 370 F.3d at 998.  28 U.S.C. § 2241 "does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001) (abrogated on other grounds).  However, the Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Id.*

"Courts may require prudential exhaustion if [:] '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)).  Nevertheless, "there are a number of exceptions to the general rule requiring exhaustion, covering situations such as where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *S.E.C.*, 637 F.2d at 688 n.4.

Here, prudential exhaustion is not required under the *Puga* factors.  488 F.3d at 815.  An administrative record is not necessary to resolve the due process questions presented by

5

Petitioner.  Waiver of the prudential exhaustion requirement will not encourage the deliberate bypass of the administrative scheme in future cases because this is a unique circumstance in which Petitioner seeks to enforce a federal court injunction.  Further, any risk of deliberate bypass of administrative procedures is reduced by the fact that district courts will only have jurisdiction in the "rare case[s]" where future petitioners allege a "colorable" constitutional or legal challenge to the Government's procedures.  *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (*citing Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 1991)).

Even if exhaustion were required, waiver would be appropriate here to avoid further irreparable harm to Petitioner and further delay in vindicating his constitutional rights.  *See, e.g.*, *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1253 (W.D. Wash. 2025).  Petitioner is suffering irreparable harm as a result of a second unlawful detention, which would unnecessarily continue — likely for months — without waiver of exhaustion.  Accordingly, the Court will not deny Petitioner's request for relief for failure to exhaust administrative remedies.

### B.    Notice

Turning to the merits of Petitioner's motion, the central dispute is whether Respondents provided adequate notice of the bond hearing sufficient to comply with this Court's injunction and procedural due process.  In general, the Court's injunction required Respondents to provide a minimum of seven-days' notice of any bond hearing and constitutional protections, if seeking to re-detain Petitioner.  (ECF No. 14 at 7.)  Petitioner claims Respondents failed to adequately notify him of the hearing because notice was mailed to an incorrect address, despite Respondents' knowledge of Petitioner's correct address — the same address where ICE conducted a home visit just days before notice was mailed.  (ECF No. 17 at 2.)  In opposition, Respondents' brief does not engage with their obligations under this Court's injunction nor their due process obligations (ECF No. 22), but Respondents contend they "should not be faulted" for service of notice to an incorrect address on file.  (*Id*. at 3.)  The Court first assesses whether notice was constitutionally adequate and compliant with this Court's Order, before considering Respondents' purported excuses for deficient notice.

*Actual Notice*:  It is undisputed that Respondents failed to provide Petitioner with actual

6

notice of the bond hearing.   However, the Court's injunction did not explicitly require actual notice (*id.* at 7), nor does due process.  *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 318 (1950) (notice must be "reasonably calculated" to reach intended recipients).

 *Reasonably Calculated Notice*:  The essential question is whether the Government provided notice to Petitioner that was "reasonably calculated" to reach him.  *See id.*  In the immigration context, "[n]otice by the Government must be reasonably calculated to apprise noncitizens of the pendency of removal proceedings and to afford them the opportunity to be present and to participate. 'The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.'" *United States v. Rivera-Valdes*, 157 F.4th 978, 989–89 (9th Cir. 2025), *cert. denied*, No. 25-972, 2026 WL 1513330 (U.S. June 1, 2026) (citing *Jones v. Flowers*, 547 U.S. 220, 226 (2006); *Mullane*, 339 U.S. at 314).  Moreover, "[w]here the Government learns that its notice efforts have not succeeded, that knowledge triggers an obligation on the Government's part to take additional reasonable steps to effect notice, if it is practicable to do so." *Id.* (citing *Jones*, 547 U.S. at 234).  A finding that notice was reasonably calculated must account for the "practicalities and peculiarities of [an individual] case." *Jones*, 547 U.S. at 230–31 (quoting *Mullane*, 339 U.S. at 314–15).

 *Rivera-Valdes* is directly on point here.  157 F.4th 978.  There, a noncitizen was ordered removed in absentia when he did not receive notice of his hearing because the immigration court mailed a single notice to the noncitizen's last known address, but the mailer contained an error and the notice was returned as undeliverable. *Id.* at 982–983.  The Ninth Circuit was clear: "Notice is not 'reasonably calculated' under the circumstances when the Government knows its method of service was ineffective and takes no additional steps to effect notice that are reasonably available to it." *Rivera-Valdes*, 157 F.4th at 987 (citing *Jones*, 547 U.S. at 227, 234, 229).

 Here, just like in *Rivera-Valdes*, the only service of notice attempted on Petitioner that identified the hearing date was the notice mailed by the immigration court, which was returned as undeliverable prior to the hearing. *See id.*  Thus, Respondents and the court knew that service was ineffective and they were required to take additional reasonable steps to effect notice to the

7

extent they were practicable. *See id*. "[I]it [is] not enough for the Government to throw up its hands and do nothing." *Id.* at 993. Respondents do not provide any evidence or argument that they attempted to send Petitioner notice of the hearing date or otherwise reach Petitioner to notify him.[6] Rather than take additional steps or seek additional time to notify Petitioner, Respondents appear to have used Petitioner's absence to bolster their argument that Petitioner was a flight risk when the bond hearing proceeded without him.

There were certainly practicable steps the Government could have taken to ensure notice was sufficiently provided. To suggest just a few low-burden common-sense ideas: Respondents could have verified the mailing address against the address in their file, they might have contacted the ICE official who last conducted a home visit, placed a mere phone call to Petitioner or his listed contact (sister) or Petitioner's former immigration counsel.[7] There are myriad small efforts that Respondents could have, and should have, taken to ensure that notice was reasonably effected. Respondents took none. Further, Respondents' failure to act is particularly stark given that, on other occasions, they notified Petitioner of court dates by phone call and directly through his SmartLINK Mobile Application.[8] (ECF No. 20 at 6.)

Respondents' attempt to excuse their deficient notice and shift blame to Petitioner is improper and troubling. Without evidence, Respondents accuse Petitioner of providing a false

---

[6]    Respondents are not excused because the immigration court mailed notice to the faulty address. This Court enjoined Respondents from re-detaining Petitioner without certain procedural safeguards and it was incumbent upon Respondents to ensure those procedural safeguards were in place or otherwise refrain from re-detaining Petitioner.

[7]    There is some discussion in Respondents' brief about the obligations of Petitioner's former immigration counsel to update Petitioner's address. (ECF No. 22 at 3.) The Court notes that there is nothing in this record to show that Petitioner's former immigration counsel would have been made aware of the inaccurate address. Most critically, there is no evidence the court's notice of hearing was ever served on former counsel. (*See id.* at 9–11.) Rather, Petitioner's family reached out to former immigration counsel to obtain any notices or documents sent to him and counsel stated that he had provided all notices received (which did not include a notice of the April 2 bond hearing). (*See* ECF No. 17-1 at 2, 32.) If former counsel was counsel of record at the time notice was sent and the Government failed to notify counsel of record, that in itself is deeply concerning to this Court.

[8]    ICE uses SmartLink as part of their Alternatives to Detention program. *See* https://perma.cc/2YXZ-T8JR.

8

address and chastise him for failing to update his address.  (ECF No. 22.)  First, a failure to comply with a statutory obligation to update an address does not forfeit a right to constitutionally sufficient notice.  *Rivera-Valdes*, 547 U.S. at 991 (citing *Jones*, 547 U.S. at 232).  Second, there is no support in the record for the contention that Petitioner provided an incorrect address, instead the record reflects that ICE had his correct address just days before the notice was sent.  Respondents point to the change of address form as evidence that Petitioner provided an inaccurate address, even if that mattered, it is not what the document reflects — the form was filled out and signed by an ICE officer.  (*See* ECF No. 22 at 8.)  Respondents provide no further explanation or a declaration from any knowledgeable person.  Therefore, on the record before the Court, there is no evidence that Petitioner provided the wrong address to Respondents, that he was even aware of the form, or that he knew of the error.

Contrary to Respondents' unsupported accusations, Petitioner makes a compelling argument, supported by evidence, that Respondents had his correct address on file at the time notice was mailed.  Following his February 20, 2026 release from custody, an ICE officer twice visited Petitioner at his home.[9]  (ECF No. 17 at 2.)  A declarant attests that she was present and witnessed one such home visit a mere five days after Respondents accuse Petitioner of providing a false address and Petitioner contemporaneously told her about another visit in March.  (ECF No. 17-1 at 12.)  ICE likely has Petitioner's current address from when he moved into his current residence in 2025, where he continues to reside.  (ECF No. 23 at 1–2.)  In light of the fact that ICE officers repeatedly successfully visited him at home, the Court may reasonably infer that the last address Petitioner provided to Respondents was his correct address.

Under the "practicalities and peculiarities" of this case, the single notice of hearing mailed by the court and returned as undeliverable prior to the hearing, without any additional reasonable steps, was not notice reasonably calculated to reach Petitioner.  *See Mullane*, 39 U.S. at 314, 315, 318 (1950) ("[P]rocess which is a mere gesture is not due process. The means employed must be

---

[9]    An ICE officer visited Petitioner on February 24, 2026 and in March 2026, after Petitioner had been released from custody but before Respondents served their motion to an incorrect address.  (ECF No. 17-1 at 12.)

such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."); *Rivera-Valdes*, 157 F.4th at 987 (citing *Jones*, 547 U.S. at 227, 234, 229). As a result, Petitioner was deprived of a full and fair opportunity to be heard as to the deprivation of his liberty, for a second time.

This Court enjoined Respondents from re-detaining Petitioner without providing constitutionally-adequate notice seven days in advance of a pre-deprivation hearing. Respondents did not provide sufficient notice under the Fifth Amendment or this Court's injunction. Yet, contrary to this Court's injunction, Respondents re-detained Petitioner. Therefore, Petitioner has met his burden to show by clear and convincing evidence that Respondents violated this Court's February 19, 2026 injunction. For a second time, within mere months, Respondents have again violated Petitioner's due process rights and deprived him of his liberty in violation of the Fifth Amendment.

### IV.    CONCLUSION

Accordingly, IT IS HEREBY ORDERED:[10]

1. Petitioner's Motion to Enforce Judgment (ECF No. 17) is GRANTED;

2. Respondents have been ordered to IMMEDIATELY RELEASE Petitioner (ECF No. 26);

3. The Court's permanent injunction stands. (ECF No. 14.) Respondents are on notice of Petitioner's correct address and his immigration counsel's address. (*See* ECF No. 17 at 3.) Therefore, Respondents shall update their records accordingly for future notices of immigration proceedings;

4. If Petitioner seeks an award of attorney's fees and costs, he shall file such motion within fourteen days of the date of this Order; and

5. Petitioner's motion to appoint counsel (ECF No. 21) is DENIED as moot, as the Court has already appointed counsel for Petitioner in this matter (ECF No. 10) and the Federal Defender has represented him (ECF No. 11).

---

[10] Respondents request the Court to lift its Order not to transfer Petitioner during the pendency of the instant motion. (ECF No. 22 at 2.) However, with the relief granted in this Order, that request is now moot.

IT IS SO ORDERED.

Date: June 9, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE